UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

MATTHEW N. RICHARD,

    Plaintiff,

v.              Case No. 20-CV-876

WILLIAM SWIEKATOWSKI,
and ANDREW WICKMAN,

    Defendants.

## DECISION AND ORDER

  Plaintiff Matthew N. Richard, who is representing himself and confined at Green Bay Correctional Institution, brings this lawsuit under 42 U.S.C. § 1983. Richard was allowed to proceed on a First Amendment retaliation claim against defendant William Swiekatowski because Richard alleged Swiekatowski issued a conduct report in retaliation for Richard writing letters to his family and friends. (ECF No. 9 at 6-7.) Richard was also allowed to proceed on a Fourteenth Amendment substantive due process claim against Swiekatowski because he alleged Swiekatowski fabricated the retaliatory conduct report. (ECF No. 16 at 3.) Additionally, Richard was allowed to proceed on a Fourteenth Amendment procedural due process claim against Andrew Wickman for failing to give him the documentary evidence he requested for his disciplinary hearing. (ECF No. 9 at 7-8.)

  The parties have consented to the jurisdiction of a magistrate judge (ECF Nos. 7, 15), and have filed cross-motions for summary judgment (ECF Nos. 30, 31).

# FACTS

*Parties*

At all times relevant hereto plaintiff Matthew N. Richard was an inmate at Green Bay Correctional Institution (GBCI). (ECF No. 33, ¶ 1.) Defendant William Swiekatowski was a Supervising Officer 2 and the Security Threat Groups (STG) Coordinator from December 2017 through August 2020. (*Id.*, ¶2.) The STG Coordinator was responsible for "tracking disruptive groups and their members in the institution and documenting their activities, reviewing incoming and outgoing mail and property for gang-related content, preparing reports regarding gang membership and activity for GBCI security staff and STG Coordinators at other Corrections institutions, and meeting with other Corrections STG Coordinators on a regular basis to exchange information and assess ongoing gang activity." (*Id.*, ¶ 3.) Defendant Andrew Wickman was a Lieutenant and served as a hearing officer at disciplinary hearings. (*Id.*, ¶¶ 4-5.)

*Richard's History with the Vice Lords*

There is no dispute that Richard was a member of the Almighty Vice Lord Nation (Vice Lords). (ECF No. 62, ¶ 6.) The defendants state that the Vice Lords is a notorious prison gang. (ECF No. 33, ¶ 7.) Richard contends the Vice Lords is a religious organization that sprouted from the civil rights movement of the 1950s and 1960s to combat white supremacy. (ECF No. 62, ¶ 7.) Richard states he was active within the Vice Lords until 2012. (*Id.*, ¶ 10.)

The defendants detail Richard's long history of Vice Lord activity beginning in 2009 while Richard was incarcerated at Waupun Correctional Institution. (ECF No. 33, ¶ 11.) While at Waupun, Richard was disciplined on multiple occasions for Vice Lord activity, resulting in extended stays in Administrative Confinement. (ECF No. 33, ¶¶ 12-21.) Specifically, Richard was disciplined for corresponding with Minister Darnell Bradley, a.k.a. "SunDown," who the defendants state is a known Vice Lord leader. (*Id.*) Richard was also disciplined for instigating physical fights with other inmates over leadership of the Vice Lords within Waupun. (*Id.*) Richard was held in Administrative Confinement at Waupun because he was deemed a security threat. (*Id.*)

Richard does not dispute that he was placed in Administrative Confinement as a security threat at Waupun on multiple occasions. (ECF No. 62, ¶¶ 12-21.) However, he contests that Bradley is a leader in the Vice Lords; asserts that Waupun security staff lied about his involvement with the Vice Lords at Waupun; and maintains that he never has been involved in gang activity. (*Id.*)

*Issuance of the Conduct Report*

On October 1, 2015, Richard transferred to GBCI. (ECF. No. 33, ¶ 22.) He states he was no longer involved with the Vice Lords. (*Id.*, ¶ 23.) At a disciplinary hearing in January 2017 Richard was found guilty of ordering a hit on a member of the Vice Lords and placed in Administrative Confinement. (*Id.*) Richard admits that he was found guilty of ordering the hit and was placed in Administrative Confinement but denies that he was the one who ordered the hit. (ECF No. 62, ¶ 23.)

3

On September 28, 2018, while still in Administrative Confinement, Richard wrote a letter to Kamallah Brelove in Milwaukee, Wisconsin. (ECF No. 33, ¶ 29.) Swiekatowski, in his role as STG Coordinator, received the letter for review on December 14, 2018. (*Id.*) Pursuant to Wis. Admin. Code § DOC 309.04, while inmates are allowed to correspond with nearly anyone, non-legal mail is monitored and may be restricted or not delivered for several reasons, including: if the mail contains contraband; threatens criminal activity or harm; threatens blackmail or extortion; discusses sending contraband; discusses escape plans; discusses breaking any state or federal laws; is written in code; asks for gifts from people not on the approved visitor list; is pornography; "poses a threat to the security, orderly operation, discipline, or safety of the institution;" inhibits an inmate's rehabilitation; or facilitates criminal activity.

In reviewing the letter Swiekatowski noted that, according to the Corrections' Offender STG Affiliations database, Brelove was a known member of the Vice Lords "Insane Vice Lord" faction. (ECF No. 33, ¶ 29.) Swiekatowski also determined that the letter contained several Vice Lord references. (*Id.*, ¶ 31.) The letter is six pages long and primarily discusses Richard's efforts to get his sentence overturned and arranging for Brelove to visit. Some parts of the letter are relevant to Richard's claims. First, Richard discussed his communications with SunDown and why he is in administrative confinement:

> They are literally petrified to allow me in G.P. because of my message and my connections in Chicago. I made the mistake early on in this incarceration by being a little too explicit in my communication with SunDown back home, and his response

4

> wasn't discreet either. Then when the Ol'Man came home, I was on the phone with SunDown (SD) discussing his arrival, that was enough for them. They looked at the way I conduct myself in speech and action and they have found it to be so different from what they are used to, it unsettled them. One of the brothers had emplored [*sic*] to try and communicate with the administration about the true nature of the organization in hopes that they understood our way of life. So . . . I shouldn't have, but I tried. They then considered me to be a threat. They did not want my knowledge of the true IDEAL to spread within their institution. Right now, in my last hearing, they said that they are afraid if I was allowed to go to G.P.

(ECF No. 37-5 at 4.) Then Richard discussed connecting various "brothers" within the "organization":

> There is another brother up there though named Starface and I will get you his information as soon as possible. There will be another brother coming home in April. As soon as you get me an address I will have him write you. If you can, please get a P.O. Box so that I can know that you will always have a mailbox no matter where your body is physically. There is also another brother who will be home on the 9th, that will be looking to get in touch with you for me. His name is Snake (Miky Coswell Tribe). He will be relaying information to you concerning a source for a revenue stream that we are trying to tap into. I am also engaged in litigation (civil) that I expect will give us a nice little lumpsum that can be utilized in some of those business ideas you had. And before I forget, I spoke to Mike, and he said that he has started his own record label and is in the process of negotiating a distribution deal with Baby of Cash Money Records. So you should touch basis with him and see how your ideas in that realm can coincide with whatever it is he is doing on that front in collaboration or whatever it comes to on that front as we all are trying to move in the same direction. . . .
>
> I keep forgetting to get his number from L.J., but you can call him and get his number. [Includes L.J.'s phone number]. You know they all be on 5th Street across from the ederly [*sic*] project. Angie is still over there too. I am trying to connect with her family on that money side which I will fill you in on as soon as you speak to Snake. I told Snake to call my girl in Chicago when he touches. So I need to you call her as well so that she

> can make sure that you both speak to each other. Her name is Renee (L.J.'s little sister, rather younger sister), [phone number]. I will tell her that you will be calling. Hammahead should be coming home in November, so either before he comes home or when he comes home, I will need to you holla at Dirt. I am about to have me cousin Shaharra go through the channels to get his number. Once I have it, I will get it to you. I really don't know if he is on the streets or not. But I am also trying to catch up with Chyna Joe as well. Once I get his location locked down, I will need you to relay some info for me. I may even need you to speak to SunDown as well. It will be easier to set that meeting up with Mike or with Hammahead. So within a couple of weeks the ball should be rolling.

(*Id.* 6-7.)

In Swiekatowski's experience as STG Coordinator, he identified "Snake" as Frederick Jones, a member of the Mickey Coswell faction of the Vice Lords. (ECF No. 33, ¶ 33.) Swiekatowski knew that at the time Richard wrote the letter Jones was set to be released from GBCI on October 9, 2018. (*Id.*) Based on an article by George W. Knox, the Director of the National Gang Crime Research Center, Swiekatowski also identified Chyna Joe as John Lofton, one of the national leaders of the Imperial Insane Vice Lord faction.. (*Id.*, ¶ 34.) Suspecting that SunDown was Darnell Bradly, Swiekatowski consulted with Bret Mierzejewski, the STG Coordinator at Waupun, who gave Swiekatowski an arrest profile from Illinois that indicated Darnell Bradley resides as a location known to house several Vice Lord members. (*Id.*, ¶¶ 35-37.)

Around the same time, Swiekatowski was given another letter Richard wrote, this one on September 25, 2018, to Frederick Jones. (ECF No. 33, ¶ 39.) The letter is a single page and was sent to Jones while Jones was still an inmate at GBCI. (ECF No. 37-6.) For the most part, the letter complained about new lock-down restrictions imposed at GBCI. At the end of the letter, Richard wrote:

> I let Renee know that you will be getting at her when you touch. Just stay in touch with her. I haven't been able to get any more info on that issue we discussed, but I am still working on it. I will eventually get it down. I am on top of it.
>
> Hell if you were going to spend your last few weeks locked down, you might as well have stayed back here. Ha, ha, ha. Yeah right! Hey once Kamallah gets me a form of communication when he touches I will instruct Renee to get it to you. So keep me posted my beloved brother.

(*Id.* at 3.)

Based on his investigation into the two letters, Swiekatowski "believed Richard was attempting to engage in business to gain profit for Vice Lords through third-party communication with the national leaders of Vice Lords." (ECF No. 33, ¶ 42.) Also, during his investigation Swiekatowski recalled another letter he reviewed in January 2017 that another GBCI inmate, Michael Johnson, wrote to Darnell Bradley. (*Id.*, ¶ 45.) In that letter, Johnson called Bradley "SunDown", stated that he met "Mateen Wasi-El Shabazz, a.k.a. Cicero Red" and discussed business plans to support the "organization's" cause and plans to create open lines of communication. (ECF No. 37-9). Swiekatowski made a connection between Johnson's letter and Richard's letters, as Richard's letters were signed "Mateen Wasi El-Shabazz". (ECF No.33, ¶ 53.)

Based off that connection and the other information Swiekatowski learned in his investigation, he issued Conduct Report 3233701. (ECF No. 33, ¶ 54.) Swiekatowski charged Richard with sending mail in violation of Wis. Admin. Code § DOC 303.24, Resistance and Petitions, and § DOC 303.36, Enterprises and Fraud. (*Id.*) An inmate violates § DOC 303.24 when he "participates in any activity associated with any security threat group or possesses any written materials, symbols or

7

symbolism related to a security threat group." Wis. Admin. Code § DOC 303.24(3). An inmate violates § DOC 303.36 when he "engages in a business or enterprise, whether or not for profit." Wis. Admin. Code § DOC 303.36(1). Swiekatowski states he issued the Conduct Report because he believed "the letters were communications to gang members plotting ways to raise money and start businesses for the Vice Lords." (ECF No. 33, ¶ 60.)

Richard does not dispute to whom he wrote the letters or that some of the people referenced in the letters were known Vice Lord members. (ECF No. 62, ¶¶ 29-44.) He also does not dispute that Swiekatowski interpreted the letters the way he did. (*Id.*, ¶¶ 29-46.) Instead, he asserts that Swiekatowski's interpretation of the three letters is obviously unreasonable. (*Id.*, ¶¶ 41, 45.) Richard states that Swiekatowski's beliefs are "manufactured" and that he lied in the Conduct Report. (*Id.*, ¶ 59.) As proof, Richard states that the content of the letters clearly demonstrate that he is simply explaining how to start a business, and it is obviously unreasonable for anyone to conclude that his letters are actually a plot to raise money and start businesses for the Vice Lords. (*Id.*, ¶ 60.) Other than the content of the letters, however, Richard does not offer any additional evidence suggesting or illustrating that Swiekatowski's interpretation was unreasonable.

Regarding Richard's claim that Swiekatowski fabricated a conduct report in retaliation for writing to his friends and family, Richard asserts that Swiekatowski did so to keep him in Administrative Segregation. (ECF No. 61 at 4.) However, Richard admits that Swiekatowski has no involvement in placement decisions. (ECF No. 62, ¶

8

24.) Richard asserts that the nature of Swiekatowski's job as STG Coordinator implies that his reports influence those administrators that actually make placement decisions. (*Id.*) But Richard does not present evidence that Swiekatowski's reports were used in decisions about where he should be placed at GBCI or that Swiekatowski knew that the reports would be so used.

*Disciplinary Due Process Hearing*

On December 14, 2018, Swiekatowski finalized Conduct Report 3233701 and submitted it to non-defendant Security Director John Kind for review pursuant to policy. (ECF No. 33, ¶ 68.) Once he submitted the Conduct Report, Swiekatowski's involvement was limited to that of a witness at the disciplinary hearing. (*Id.*, ¶ 69.) Kind determined that the Conduct Report should proceed as a major offense and sent it to the hearing officer, Wickman. (*Id.*, ¶¶ 70-71.) On December 19, 2018, Wickman delivered a copy of the Conduct Report to Richard and offered him an uncontested disposition, which Richard refused. (*Id.*, ¶ 72.) A due process hearing was then set for January 7, 2019. (*Id.*, ¶ 73.)

Richard was assigned a staff representative, non-defendant Teacher Nuskiewicz, to help him prepare for the hearing. (ECF No. 33, ¶¶ 73-74.) Nuskiewicz informed Richard that he had two days to submit Form DOC-73, which arranges for the attendance of witnesses and the procurement of evidence used at the due process hearing. (*Id.*, ¶¶ 74-76.) Richard was instructed to mail his Form DOC-73 to the Security Director's office. (*Id.*, ¶ 78.) Neither Security Director Kind nor Wickman have a record of receiving Richard's Form DOC-73 prior to the January 7, 2019 due

9

process hearing. (*Id.*, ¶¶ 80-81.) It is undisputed that at the January 7 hearing Richard had in his possession all of the evidence Wickman used to find Richard guilty of the offenses listed in the Conduct Report. (ECF No. 62 at 49.) Specifically, Wickman determined that it was "more likely than not Richard is engaged in a business to gain profit for the Vice Lords." (ECF No. 33, ¶ 87.)

Richard appealed the finding on the ground that he did in fact submit his Form DOC-703, and on that basis he was granted another hearing. (ECF No. 33, ¶¶ 88-89.) This time, the Security Director did receive Richard's Form DOC-307 wherein Richard requested Swiekatowski be a witness at his hearing. (*Id.*, ¶¶ 92-93.) Richard also requested the three letters that were the subject of the Conduct Report, and the "IDOC Transmittal Identifying Darnell Bradley as Minister of Vice Lords." (*Id.*, ¶ 93.) Kind allowed Swiekatowski to appear as a witness and he produced the three letters, but he refused to provide the "copy of the Illinois STG data base" because of "security concerns." (*Id.*, ¶ 94.) Kind informed Richard he could rely on the testimony of the STG Coordinator (Swiekatowski) for that information. (*Id.*) Wickman did not have the authority to overrule Kind's decision as to the IDOC transmittal information. (*Id.*, ¶ 98.)

Richard's second hearing was held on February 11, 2019. (ECF No. 33, ¶ 100.) Richard had access to the letters, he questioned Swiekatowski, and he gave a statement. (*Id.*) Wickman again found Richard guilty of the two offenses. (*Id.*, ¶ 101.)

In his complaint Richard alleges that Wickman was the person who refused his request to see the additional evidence related to the security threat groups. (ECF No.

10

1, ¶¶ 137-38.) In his response materials to the defendants' motion for summary judgment Richard does not dispute that Kind had the sole authority to determine what evidence Richard was allowed to have at the due process hearing. (ECF No. 62 at 51, "There is no dispute as to paragraphs 98, 99.") Richard also now asserts that Wickman violated his due process rights because he had prematurely determined that Richard was guilty of the charged offenses and because he was not an impartial hearing officer. (ECF No. 61 at 49-50.)

## SUMMARY JUDGMENT STANDARD

The court shall grant summary judgment if the movant shows there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). "Material facts" are those under the applicable substantive law that "might affect the outcome of the suit." *See Anderson*, 477 U.S. at 248. A dispute over a "material fact" is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

In evaluating a motion for summary judgment the court must view all inferences drawn from the underlying facts in the light most favorable to the nonmovant. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986). However, when the nonmovant is the party with the ultimate burden of proof at trial, that party retains its burden of producing evidence which would support a reasonable jury verdict. *Celotex Corp.*, 477 U.S. at 324. Evidence relied upon must be

11

of a type that would be admissible at trial. *See Gunville v. Walker*, 583 F.3d 979, 985 (7th Cir. 2009). To survive summary judgment a party cannot just rely on his pleadings but "must set forth specific facts showing that there is a genuine issue for trial." *Anderson*, 477 U.S. at 248. "In short, 'summary judgment is appropriate if, on the record as a whole, a rational trier of fact could not find for the non-moving party.'" *Durkin v. Equifax Check Servs., Inc.*, 406 F.3d 410, 414 (7th Cir. 2005) (citing *Turner v. J.V.D.B. & Assoc., Inc.*, 330 F.3d 991, 994 (7th Cir. 2003)).

## ANALYSIS

*First Amendment Retaliation Claim Against Swiekatowski*

Richard claims that Swiekatowski gave him the Conduct Report in retaliation for exercising his First Amendment right to correspond with his family and friends. At summary judgment, the plaintiff has the initial burden to make a prima facie showing that "(1) [the plaintiff] engaged in an activity protected by the First Amendment; (2) he suffered a deprivation likely to deter such activity; and (3) the First Amendment activity was at least a motivating factor in the decision to impose the deprivation." *Hawkins v. Mitchell*, 756 F.3d 983, 996 (7th Cir. 2014). "'To make a prima facie showing of causation the plaintiff must show only that the defendant's conduct was a sufficient condition of the plaintiff's injury (that is, sufficient to cause it). The defendant can rebut, but only by showing that his conduct was not a necessary condition of the harm—the harm would have occurred anyway.'" *Mays v. Springborn*, 719 F.3d 631, 634 (7th Cir. 2013) (quoting *Green v. Doruff*, 660 F.3d 975, 977 (7th Cir. 2011)). If the defendants successfully rebut the plaintiff's prima facie showing by

12

demonstrating the harm would have occurred regardless, then "the plaintiff must demonstrate that the defendant's reason was pretextual and that the real reason was retaliatory animus." *Thayer v. Chiczewski*, 705 F.3d 237, 252 (7th Cir. 2012.) "At the summary judgment stage, this means a plaintiff must produce evidence upon which a rational finder of fact could infer that the defendant's proffered reason is a lie." *Id.*

Richard argues that Swiekatowski punished him (by issuing him the Conduct Report) for his speech (writing to friends and family). Thus, Richard makes a prima facie showing that Swiekatowski's actions caused Richard's deprivation. The defendants successfully rebut this showing by demonstrating that Swiekatowski issued the Conduct Report not because Richard was writing his family and friends but because he believed *the content* of the letters at issue violated Wis. Admin. Code §§ DOC 303.24 and DOC 303.36.

Swiekatowski, using his professional experience as STG Coordinator, consulted multiple sources and identified known Vice Lord members mentioned in Richard's letters, including Snake, Brelove, and Chyna Joe. Also, the letters speak for themselves and demonstrate that Richard was trying to connect these known Vice Lord Members to set up some sort of business enterprise. A plain reading of the letter to Brelove shows that Richard wanted to connect Snake and Brelove to set up a "source for a revenue stream" to "tap into". (ECF No. 37-5 at 6.) He also wanted Brelove to facilitate a meeting between Snake and his girlfriend, Renee, and connect Brelove with Angie and her family who are involved "on the money side". (*Id.*) Richard also explicitly stated that he was trying to "catch up with Chyna Joe" to "get the ball

13

rolling." (*Id.* at 7.) A plain reading of the letter to Frederick Jones, a/k/a Snake, mentions connecting Renee and Snake and having Brelove arrange for Richard "a form of communication." The Johnson letter served only to provide more explicit context to Richard's two letters because it directly mentions Richard and explicitly mentions the business plans that were only alluded to in Richard's first two letters.

Richard does not dispute that his letters mention known members of the Vice Lords, nor does he dispute that Swiekatowski interpreted the letters as referencing setting up business ventures for the Vice Lords. Instead, he tries to establish that Swiekatowski's interpretation of the letters, and consequently the reason given for issuing the Conduct Report, was pretextual. He argues that the letters on their face obviously do not violate Wis. Admin. Code §§ DOC 303.24 and DOC 303.36. Richard states that the letters very clearly show that he was merely explaining how to start a business and that no reasonable factfinder could conclude that the letters could contain a plot to generate money for the Vice Lords.

In fact, the opposite is true—no reasonable factfinder could conclude that the letters, specifically the letter to Brelove, were merely Richard giving generic business advice. Again, the letters speak for themselves. Richard stated that Snake "will be relaying information to you [Brelove] concerning a source for a revenue stream that *we* are trying to tap into." (ECF No. 37-5 at 6.) (Emphasis added.) Richard further discussed that he is anticipating a damages award from *his* pending civil lawsuit "that I expect will *give us* a nice little lumpsum that can be utilized in some of those business ideas you had." (*Id.*) (emphasis added). Richard was clearly talking about

14

investing his damages award in Brelove's business. That sentence alone demonstrates that Swiekatowski reasonably decided the letter violated § DOC 303.24.

Even if the letters were not clearly a violation of the relevant DOC sections at best Richard demonstrates that Swiekatowski was mistaken in interpreting the letters and issuing the conduct. This is insufficient to establish that the Conduct Report was issued in retaliation for Richard exercising his right to write to his family and friends. *See Johnson v. Eckstein*, Case No. 18-cv-1696-bhl, 2020 WL 6323412 at *9 (E.D. Wis. Oct. 28, 2020) (finding that an officer who misinterpreted phrases in a letter and then issued a conduct report based off that misinterpretation "does not provide a basis to conclude that [the officer] wrote the conduct report in retaliation" and citing cases for the proposition that mistakenly believing an inmate violated prison rules "is insufficient to show pretext in the context of a retaliation claim.").

The only other evidence of pretext Richard offers is his belief that Swiekatowski issued the Conduct Report because he wanted to keep Richard in Administrative Segregation. However, Richard admits that Swiekatowski was not involved in his placement decisions and merely speculates that, due to the nature of his position as STG Coordinator, Swiekatowski knew the placement committee would consult his reports. But "[a] plaintiff's speculation alone about the defendants' retaliatory motive 'cannot create a genuine issue of material fact sufficient to survive a motion for summary judgment.'" *Johnson*, 2020 WL 6323412 at * 8 (quoting *Parrilla v. Beahm*, No. 17-C-841, 2018 WL 3717026 at *6 (E.D. Wis. Aug. 3, 2018)).

15

In sum, Richard fails to produce evidence upon which a reasonable factfinder could conclude that Swiekatowski is lying about why he issued the Conduct Report. Summary judgment on the retaliation claim is granted in Swiekatowski's favor.

*Substantive Due Process Claim Against Swiekatowski*

Richard claims that Swiekatowski's fabricated Conduct Report also violates his Fourteenth Amendment substantive due process rights. "A prison official's fabrication of a conduct report 'can amount to a violation of substantive due process if the charges were in retaliation for the exercise of a constitutional right." *Scott v. Kind*, Case No. 20-cv-1205-pp, 2020 WL 6870101 at *4 (Nov. 23, 2020) (quoting *Black v. Lane*, 22 F.3d 1395, 1402-03 (7th Cir. 1994)). Because the court found above that, as a matter of law, Swiekatowski did not issue the Conduct Report in retaliation for Richard exercising his right to write to his family and friends, the court also finds as a matter of law that Swiekatowski did not violate Richard's substantive due process rights when he issued the report. Summary judgment on the substantive due process claim is granted in Swiekatowski's favor.

*Procedural Due Process Claim Against Wickman*

Richard was allowed to proceed on a procedural due process claim against Wickman because he alleged that Wickman sentenced him to one year in segregation without giving him the opportunity to present at his February 2019 hearing all the evidence he wanted to--specifically, the arrest report from Illinois. (ECF No. 9 at 7.) In his summary judgment materials Richard now appears to argue that his due process rights were violated because Wickman had already made up his mind to find him

16

guilty and because he was not impartial at his hearing. However, Richard was not allowed to proceed on that type of due process claim, and he is limited to the scope of the screening order. *See Werner v. Hamblin*, Case No. 12-C-0096, 2013 WL 788076 at *2 (E.D. Wis. March 1, 2013).

Turning to Richard's claim that Wickman violated his due process rights by not giving Richard access to all the documentary evidence available, it is undisputed that non-defendant Security Director Kind had the sole authority to approve or deny the production of documentary evidence to Richard. It is also undisputed that Wickman had no power to provide Richard with the requested documentary evidence. Section 1983 "creates a cause of action based on personal liability and predicated upon fault; thus, liability does not attach unless the individual defendant caused or participated in a constitutional violation." *Hildebrant v. Ill. Dep't of Nat. Res.*, 347 F.3d 1014, 1039 (7th Cir. 2003) (quoting *Vance v. Peters*, 97 F.3d 987, 991 (7th Cir. 1996)). Because § 1983 makes public employees liable "for their own misdeeds but not for anyone else's," *Burks v. Raemisch*, 555 F.3d 592, 596 (7th Cir.2009), no reasonable fact finder could conclude that Wickman should be held liable for Kind's actions. Summary judgment is granted in Wickman's favor.

## CONCLUSION

For the foregoing reasons, the defendants' motion for summary judgment is granted. Swiekatowski also argued he was entitled to qualified immunity. Because the court grants summary judgment on the merits, it does not need to address the

17

qualified immunity argument. Richard's motion for summary judgment is denied. The case is dismissed.

## ORDER

**NOW, THEREFORE, IT IS HEREBY ORDERED** that the defendants' motion for summary judgment (ECF No. 31) is **GRANTED**.

**IT IS FURTHER ORDERED** that Richard's motion for summary judgment (ECF No. 30) is **DENIED**.

**IT IS FURTHER ORDERED** that this case is **DISMISSED**. The Clerk of Court will enter judgment accordingly.

This order and the judgment to follow are final. A dissatisfied party may appeal this court's decision to the Court of Appeals for the Seventh Circuit by filing in this court a notice of appeal within **30 days** of the entry of judgment. *See* Federal Rules of Appellate Procedure 3, 4. This court may extend this deadline if a party timely requests an extension and shows good cause or excusable neglect for not being able to meet the 30-day deadline. *See* Federal Rule of Appellate Procedure 4(a)(5)(A).

Under certain circumstances a party may ask this court to alter or amend its judgment under Federal Rule of Civil Procedure 59(e) or ask for relief from judgment under Federal Rule of Civil Procedure 60(b). Any motion under Federal Rule of Civil Procedure 59(e) must be filed within **28 days** of the entry of judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2). Any motion under Federal Rule of Civil Procedure 60(b) must be filed within a reasonable time,

generally no more than one year after the entry of the judgment. The court cannot extend this deadline. *See* Federal Rule of Civil Procedure 6(b)(2).

A party is expected to closely review all applicable rules and determine what, if any, further action is appropriate in a case.

Dated at Milwaukee, Wisconsin this 22nd day of February, 2022.

BY THE COURT

_William E. Duffin_
WILLIAM E. DUFFIN
United States Magistrate Judge